## HACKER v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.
April 6, 1925. Rehearing Denied
May 11, 1925.)

No. 4434.

1. **Criminal law** ⟺878(4)—**Conviction for conspiring to maintain nuisance held not inconsistent with acquittal for sale and possession.**

Conviction for conspiring to maintain common nuisance by unlawfully selling intoxicating liquor on premises, in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), under one count, *held* not inconsistent with acquittal for sale and possession of liquor charged in other counts.

2. **Conspiracy** ⟺47—**Evidence held to sustain conviction for participating in conspiracy to maintain common nuisance in violation of National Prohibition Act.**

Evidence *held* to sustain conviction of attorney for roadhouse for participating in conspiracy to maintain roadhouse as common nuisance, in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

In Error to the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

W. L. Hacker was convicted of participating in conspiracy to maintain common nuisance in violation of National Prohibition Act, and he brings error. Affirmed.

L. B. Fowler, of Reno, Nev., for plaintiff in error.

George Springmeyer, U. S. Atty., and Chas. A. Cantwell, Asst. U. S. Atty., both of Reno, Nev., and George A. Whiteley, Asst. U. S. Atty., of Carson City, Nev.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. [1] The plaintiff in error was, with Lee Rickman, Louis Svec, Jack ·Wirt, Ellen Wirt, and T. J. Grant, charged with having on the 7th day of April, 1923, and within the jurisdiction of the court below, unlawfully and corruptly conspired together to, among other things, "maintain a common nuisance at and in those certain premises situated on the Virginia road, county of Washoe, state and district of Nevada, commonly known as and called." 'Quinn's Resort,' by unlawfully, willfully, and knowingly keeping therein for sale intoxicating liquor, to wit, whisky, in violation of the National Prohibition Act, * * * and that such conspiracy continued and was in process of execution by said defendants during all the times from on or about the 7th day of

April, 1923, to on or about the 23d day of August, 1923, and at the times of the commissions of each and every of the overt acts in this count hereinafter set forth." That count (which was the first of the indictment) then proceeded to set ·out various overt acts alleged to have been committed by the defendants, including the plaintiff in error Hacker.

The remaining 27 counts of the indictment charged the defendants, including the plaintiff in error Hacker, with having, at various specified times within the jurisdiction of the court, knowingly and unlawfully sold or possessed intoxicating liquor. The plaintiff in error was found guilty under the first count, but acquitted under each of the remaining 27 counts. We see no inconsistency in the verdicts. The plaintiff in error is an attorney at law, and as such represented the owner of the Quinn Resort property in a suit brought by the government to abate it as a nuisance, and in that capacity, according to the record, made and argued a motion May 14, 1923, to dismiss that proceeding, and on July 10, 1923, made and argued a motion for the postponement of the trial of that action.

[2] The record in those proceedings was offered in evidence by the government, and admitted (over· the objections of the plaintiff in error), as showing his connection with the transactions occurring in the roadhouse, called Quinn's Resort, alleged in the indictment. Some of those transactions were thus stated by the witness Hemphill for the government:

"I am a general prohibition agent, with headquarters at Los Angeles. I am acquainted with the defendants W. L. Hacker, Louis Svec, and Mrs. Ellen Wirt. I was first in Quinn's roadhouse August 21, 1923, with Agents Adams and Kyle, and two ladies. Arrived there between 9 and 9:30 p. m.; got out of taxi, rang door bell, and were admitted by Louis Svec. Hacker was present at that time. Hacker was introduced to Agent Kyle by the two ladies. Kyle and Hacker talked for about three minutes. Hacker then went through a door leading into the barroom, and told Louis Svec that it was all right for us to purchase intoxicating liquor.· Hacker informed Kyle that drinks would have to be purchased at the bar; that sales would not be made in the ballroom. Agent Kyle purchased 42 drinks. Agent Adams purchased 14 drinks, and witness purchased 35 drinks. These were not all drank by the agents. The whole party, Mr. Hacker, Louis Svec, and several other parties, had come in. We were introduced

to them. Witness was sober all evening. Purchases of drinks were made from Louis Svec, who gave the name of Schmidt. License of the Quinn's roadhouse issued in name of Svec. I took the name from there. I did not see any of the other defendants there. We remained there until about 2:30 a. m. Mr. Hacker, while standing there at the bar, stated in the presence of Agents Adams and Kyle and myself that this place had been raided several times, evidence had been secured of violation of the National Prohibition Act, and that he was attorney for the Quinn's roadhouse. He told us of Agents English and Cooper having come to Reno and posed as being here for the purpose of getting a divorce, and securing the confidence of certain attorneys, and having been introduced by him into these places, told us that he thought it was very clever, the manner in which they had secured their evidence, and he stated that he had advised the place to continue in operation; that they had as much on them as they could; that they could not do any more under the charges that had already been brought.

"Mr. Hacker stated that, if he were running a place, he would build, he would have two houses; one, when it was abated under the law, he would move into the other and continue operation. By the time the second place would be abated, he would move back to the original place, the abatement by that time having been lifted. Mr. Hacker made reference to the fact that the Quinn's roadhouse had been raided; liquor violations had been found on these premises. Hacker did not say anything about an abatement or an injunction. Met Mrs. Wirt at Quinn's roadhouse on August 23d, when he was accompanied by Agents Adams, Kyle, and Hacker. On the afternoon in company with Agent Kyle had a conversation with Hacker at his office. Hacker read to witness and Agent Kyle several affidavits being prepared in the case to be tried on Quinn's roadhouse, and he stated, relative to a case, that he had Mr. English—that is, Agent English and Agent Cooper scared; in fact, he stated, to repeat his words, that he would 'rip the pants off them if they ever come back here in this state,' and they would never show up in court for these cases; and he said there was several lawyers, or a lawyer, I don't remember precisely, that could get things by in this state. Hacker said that he was attorney for Quinn's roadhouse, that he expected to beat the case, that the agents would never appear, and he read to us parts of the affidavits."

The credibility of the witness was, of course, for the jury to determine; but we think, as did the trial court, that the record offered and admitted tended to show that the action of the plaintiff in error in seeking to delay the trial of the abatement suit was in the interest of the maintenance of the roadhouse.

The judgment is affirmed.